IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TABITHA TOTAH,                                    No. C 10-05956 CW

      Plaintiff,                          ORDER GRANTING
                                                  DEFENDANT'S MOTION
    v.                                          FOR MOTION FOR
                                                  SUMMARY JUDGMENT
DONALD BIES,

      Defendant.

_____/

    Plaintiff Tabitha Totah alleges a single cause of action
against sole Defendant Donald Bies, accusing him of defamation.
Having considered all of the parties' submissions and oral
argument, the Court grants his motion for summary judgment on the
merits.

BACKGROUND

    Lucasfilm Entertainment Company Ltd. hired Totah in 2004 and
she was promoted to the position of "Markets Events Manager" in
2006.  Bies is a model maker and first began working for
Industrial Light and Magic (ILM), a division of Lucasfilm, in
1987.  Bies Dec. at ¶ 2.  Bies worked with Lucasfilm or an
affiliated agency from then until 2007.  Id.  In 2006, the ILM
model shop in which Bies worked was sold to a group of private
investors.  Id.  Bies, however, continued to work with Lucasfilm
on a consulting basis.  Id.  Some of this consulting work included

working on the set-up, artifact repair, and de-installation of Lucasfilm international exhibitions.  Id.  Bies and Totah worked together on three different Lucasfilm exhibitions, first in Korea, then in Brussels, and later in Madrid.

Totah claims that Bies defamed her by telling others that she was sexually promiscuous and slept around, and by making various false statements relating to her job performance.  He made the allegedly defamatory statements about Totah to two individuals, first to Stacey Cheregotis and then to Howard Roffman.  Cheregotis is a director of global product development for Lucas Licensing. Cheregotis had working relationships with both Totah and Bies, and Cheregotis and Bies were friends.  Roffman is the President of Lucas Licensing, and has held that position for approximately ten years.

In October 2008, Bies and Cheregotis, accompanied by their families, went to a pizza parlor for dinner.  Over the course of the meal, they had a conversation about their work with Lucasfilm, which included a discussion about Totah's conduct while on the job.  Declaration of Steven Robinson, Ex. F, Bies Dep. I at 68:3-5.  Bies testified about the comments he made during the course of his conversation with Cheregotis.  He said he probably told Cheregotis that "it was a bit of a joke . . . among the crew. That [Totah] was, in quotes, 'loose,' unquote."  Id. at 57:3-12. Bies also told Cheregotis that Totah engaged in excessive drinking

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

1   and partying while traveling on Lucasfilm business.  <u>Id.</u> at 58:1-

2   4, 9.

3        Cheregotis relayed to Roffman her conversation with Bies.  On

4   December 3, 2008, Roffman called Bies and questioned him about

5   Totah's conduct.  Robinson Dec., Ex. H, Roffman Dep. I at 50:9-

6   51:22.  According to Roffman, Bies told him that Totah "was not a

7   good representative of Lucasfilm on the road," and that she was

8   responsible for errors in text panels at the exhibition in Korea.

9   <u>Id.</u> at 53:24-25; Roffman Dec. at ¶ 9.  Roffman also testified that

10  Bies

11

12        talked about [Totah's] temper, talked about fights that
          she had gotten into with different partners, he talked
13        about her superficial knowledge of a lot of the things
          that she was dealing with.  He talked about her
14        reputation for sleeping around with people on the crew
          to the point that it was a joke among people working on
15        the exhibition.  He talked about her excessive partying
          and drinking that was preventing her from attending
16        events.  He talked about her lack of polish with the
          press.
17

18  <u>Id.</u> at 54:10-19.[1]  Roffman denied that Bies told him that Totah

19  was sexually promiscuous or had a reputation for being so.

20  Roffman Dec. at ¶ 11.  Finally, Roffman attested,

21

22        When Don Bies told me about Tabitha Totah, he told me
          among other things, that she slept with people on the
23        crew of the business partners responsible for setting

24  _____

25        [1] Roffman also stated that Bies had told him that Totah
     "seemed to have an adversarial relationship" with employees of the
26   Lucasfilm Archives Division, in particular Laela French and Joanee
     Honour.  Bies Dec. at ¶ 9.  In her opposition, Totah does not
27   assert that this particular statement is part of her claim for
     defamation.

28

up the exhibits and that this was well known among
crewmembers, to the point it was openly joked about.
Roffman Supp. Dec. at ¶ 3.

Bies testified that he also told Roffman that Totah was
flirtatious with a crewmember during a business trip to Belgium,
that the crewmember was removed to prevent further contact with
Totah, and that she was known as "loose" among the crew.
Robinson, Ex. F, Bies Dep. I at 51:11-52:13, 56:22-57:12.

The basis for Bies' statements about Totah's sexual conduct
and reputation included the following.  Bies witnessed her
flirtatious behavior with the crewmember in Brussels, and Totah
told him about her interest in the crewmember.  Simerly Dec., Ex.
H, Bies Dep. I at 51:11-21.  Jose Araujo, the senior
representative of UAU International, an event production company
and client of Lucasfilm, told Bies that he thought Totah was
sleeping with a UAU crewmember, and that Totah had a reputation
for being "loose" with crewmembers.  Id. at 111:3-5; Ex. G, Bies
Dep. II at 152:22-25.  Araujo's testimony corroborates this.  He
stated that it was common knowledge among the UAU crew that Totah
and a crewmember named Ricardo slept together and that the crew
often joked about Totah, guessing whom she would sleep with next.
Declaration of José Araujo at ¶ 5-6.  Bies testified that he never
received confirmation that Totah had a sexual relationship with
Ricardo; he characterized the allegation as a rumor.  Bies Dep. II
at 143:19-24.  Finally, Bies testified that a different Jose from

UAU, apparently Jose Poeira, told him that Totah had a reputation for being "loose" with crewmembers.  Simerly Dec., Ex. G., Bies Dep. II at 151:15-152:25.

When asked whether she "had sexual relations with any employees of Lucasfilm partners while traveling on Lucasfilm business," Totah admitted to having sex with one person, Ricardo, a UAU crewmember.[2]  Simerly Dec., Ex. A, Totah Dep. II at 227:14-228:12, 230:17-21.  Totah further admitted to sleeping with a person named Dado during a Lucasfilm business trip to Brazil.  Id. at 228:17-229:6.  She testified that Dado was affiliated with a third-party vendor to Lucasfilm that managed a store.  Id. at 230:5-12.  Totah did not consider Dado a crewmember.  Id. at 230:5-16.

Bies' statement that Totah had a temper and fought with business partners was based on the following.  Bies witnessed a heated exchange in Brussels between Totah and a Frenchman involved in the exhibition, and he was told about an argument she had with

---

[2] Bies argues that Totah admitted to having sexual relations with crewmembers in the plural, but this is incorrect.  Totah's testimony was as follows:

> Q: Well, let me ask you this: Have you had sexual relations with any employees of Lucasfilm partners while traveling on Lucasfilm business?
> A. With crew members?
> Q. Yes.
> A. Yes.
> Q. How many?
> A. One.

Simerly Dec., Ex. A, Totah Dep. II at 227:14-21.

United States District Court
For the Northern District of California

the director of a museum in Madrid.  Simerly Dec., Ex. G, Bies Dep. II at 27:1-21; 98:18-23.

Bies stated that he told Roffman that Totah had superficial knowledge of her job due to errors that appeared on panels used in the Korea exhibition and because, on a number of occasions, Totah asked him to speak with certain individuals because he was more knowledgeable about Star Wars films than she was.  Id. at 99:20-100:12.  Totah admitted to misspelling the names of Star Wars characters and locations on the panels.  Simerly Dec., Ex. A, Totah Dep. II at 154:5-14.

The basis for Bies' statements about Totah's drinking and missed meetings, according to Bies, was that he was informed that Totah had missed a meeting in Germany because she was too "hung over" from drinking and socializing the previous night.  Simerly Dec., Ex. G, Bies Dep. II at 118:10-18.  The meeting involved a museum that was a potential place for an exhibition.  Id. at 118:22-24.  Bies testified that a Jose from UAU told him about this incident.  Both Jose Poeira and Jose Aruajo corroborate this testimony.  Poeira Dec. at ¶ 8; Araujo Dec. at ¶ 8.  Totah denied that she ever missed meetings.  Simerly Dec., Ex. A, Totah Dep. II at 152:25-153:8.  However, she admitted to being drunk while attending one or more tradeshows or licensing shows on behalf of Lucasfilm.  Simerly Dec., Ex. B, Totah Dep. I at 118:2-119:9.  She did not recall the exact number of times, but stated that it was not more than five times.  Id.

United States District Court
For the Northern District of California

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

DISCUSSION

"The tort of defamation is an invasion of the interest in reputation."  Witkin, 5 Summ. of Cal. L., Torts, § 529 (10th Ed.

United States District Court
For the Northern District of California

7

2005).  Defamation may be libel or slander.  Cal. Civ. Code § 44.
A claim for defamation requires the following elements: (a) a
publication that is (b) false, (c) defamatory, (d) unprivileged
and that (e) has a natural tendency to injure or cause special
damages.  Taus v. Loftus, 40 Cal. 4th 683, 720 (2007).

The defamatory matter must be "published," that is,
communicated "to some third person who understands the defamatory
meaning of the statement and its application to the person to whom
reference is made."  Ringler Associates, Inc. v. Maryland Cas.
Co., 80 Cal. App. 4th 1165, 1179 (2000).

"The sine qua non of recovery for defamation is the existence
of a falsehood."  Baker v. Los Angeles Herald Examiner, 42 Cal. 3d
254, 260 (1986).  "In all cases of alleged defamation, whether
libel or slander, the truth of the offensive statements or
communication is a complete defense against civil liability,
regardless of bad faith or malicious purpose."  Ringler, 80 Cal.
App. 4th at 1180.  "It is the defendant's burden to 'justify' or
show the truth of the statements."  Id.  "It is sufficient if the
substance of the charge is proven true, irrespective of slight
inaccuracies in the details, so long as the imputation is
substantially true so as to justify the gist or sting of the
remark."  Id. at 1180-81 (emphasis in original and internal
quotation marks omitted).

California Code of Civil Procedure section 46 provides, in
relevant part, that slander may be a false and unprivileged

United States District Court
For the Northern District of California

statement that "tends directly to injure" a person with respect to his or her "office, profession, trade or business," or "a want of chastity."  Cal. Civ. P. § 46(3) and (4).

Finally, under California Civil Code section 47(c), a publication is privileged when it is made in

> a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

Cal. Civ. Code § 47(c).  Section 47(c) applies "where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest."  Deaile v. General Telephone Co. of California, 40 Cal. App. 3d 841, 846 (1974)[3] (citing Fairfield v. Hagan, 248 Cal. App. 2d 194 (1967), overruled on other grounds by, Lundquist v. Reusser, 7 Cal. 4th 1193 (1994)).  "The word 'interested' as used in the statute refers to" an interest that is related to the defendant's efforts to protect "his own pecuniary or proprietary interest;" the relationship between the parties to the communication must be contractual, business or similar in nature, "such as between partners, corporate officers and members of incorporated associations;" and the communication must have

---

[3] Deaile addressed California Civil Code section 47(3), which was renumbered as section 47(c) in 1990.  1990 Cal. Stat. 1491 (A.B. 3765).

9

been "in the course of the business or professional relationship." *Rancho La Costa, Inc. v. Superior Court*, 106 Cal. App. 3d 646, 664-65 (1980).

Under section 47(c), "defendant generally bears the initial burden of establishing that the statement in question was made on a privileged occasion, and thereafter the burden shifts to plaintiff to establish that the statement was made with malice." *Taus*, 40 Cal. 4th at 721. *Taus* explains that the

> malice necessary to defeat a qualified privilege is "actual malice" which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff <u>or</u> by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and thereafter acted in reckless disregard of the plaintiff's rights.

40 Cal. 4th at 721 (quoting *Sanborn v. Chronicle Pub. Co.*, 18 Cal. 3d 406, 413 (1976)).

Unlike a purported statement of fact, a statement of opinion generally does not support a claim for defamation. *Taus*, 40 Cal. 4th at 720. California law applies a "totality of the circumstances" test to determine whether an alleged defamatory statement is one of fact or of opinion. *Baker*, 42 Cal. 3d at 260. "First, the language of the statement is examined . . . Next, the context in which the statement was made must be considered." *Id.* at 260-61. "If it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Standing*

10

Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman, 55 F.3d 1430, 1441 (9th Cir. 1995) (holding that an allegation of "dishonesty" does not imply facts capable of objective verification and is not actionable).

As noted earlier, Totah argues that Bies defamed her by telling others that she was sexually promiscuous and slept around, and making several false statements with respect to her performance on the job. Specifically, she argues that Bies defamed her by stating the following: (1) she had a reputation for being sexually promiscuous, (2) she was in fact sexually promiscuous, (3) she slept around, (4) she was a bad representative of Lucasfilm, (5) she was responsible for errors in a text panel at the Korea exhibition, (6) she lacked polish with the press, (7) she lacked knowledge about her job, (8) she was quarrelsome with business partners, (9) she partied and drank too much, and (10) she missed meetings while traveling on Lucasfilm business.

Totah alleges that Bies defamed her by stating that she had a reputation for being sexually promiscuous. There is no evidence that Bies used that phrase. Bies testified that he told Cheregotis that it was a joke among the crew that Totah was "loose." Roffman stated that Bies told him that Totah had a reputation for sleeping around with people on the crew to the point that it was a joke. Bies asserts that these statements were substantially true. Araujo's declaration confirms that Totah had

such a reputation.  Totah relies on testimony from Paulo Dias, the owner of UAU, that he was not aware of any sexual indiscretion by Totah, of her attraction to Ricardo, or of any UAU crewmember joking about her sexual behavior.  This testimony does not constitute evidence that Totah did not have the reputation Bies described.  It simply establishes that Dias was unaware of it.

Furthermore, Bies' statements about Totah's reputation to Cheregotis and Roffman are privileged.  Even though Bies' statement to Cheregotis was made in a social setting, Bies and Cheregotis shared an interest in the success of Lucasfilm business endeavors and Bies' statement was reasonably calculated to protect Lucasfilm's interests.  Bies' statement pertained to Totah's reputation with Lucasfilm business partners and, thus, related directly to the company's interest in maintaining its business relationships.  It is undisputed that Roffman, the President of Lucas Licensing, had an interest in information about Totah's conduct while on business travel and that he elicited the information from Bies.  Totah has pointed to no evidence that Bies made these statements with malice, or that he lacked reasonable grounds to believe them to be true.

Totah also claims that Bies defamed her by stating that she was in fact sexually promiscuous.  Again, there is no evidence that Bies used that phrase.  Totah contends that Bies "at least" told Cheregotis that Totah "slept around."  However, only Roffman testified that Bies made such a statement to Cheregotis, and his

testimony is inadmissible hearsay.  Cheregotis testified that she refused to let Bies tell her any details.

There is no evidence that Bies told Roffman that Totah in fact "slept around."  According to Roffman, Bies told him that Totah "slept with people on the crew of the business partners responsible for setting up the exhibits."  Bies asserts as a defense that his statement is substantially true, and he carries the burden to establish this.  As noted earlier, the truthfulness of a statement is sufficiently demonstrated if the substance of the charge is proven true, regardless of slight inaccuracies.  It is simply required that "the imputation is substantially true so as to justify the gist or sting of the remark."  <u>Ringler</u>, 80 Cal. App. 4th at 1180-81.

Here, the imputation of Bies' remark is that Totah slept with employees of Lucasfilm business partners.  Totah admitted to having sex with one UAU crewmember, and with another individual, affiliated with a third-party vendor to Lucasfilm, during a business trip to Brazil.  Although Totah did not sleep with more than one crewmember, she slept with a second person who was likewise involved in Lucasfilm business.  This evidence demonstrates the substantial truth of Bies' remark, such that it justifies the gist of it.  Therefore, Bies may not be held liable for this statement.

Nevertheless, Totah argues that a jury must determine whether Bies impliedly communicated that she was promiscuous.  However,

when the underlying facts are not in dispute, as in this case, the Court may determine whether the statement at issue is substantially true.  See Gilbert v. Sykes, 147 Cal. App. 4th 13, 27-29 (2007) (affirming, in the context of an anti-SLAPP motion, the trial court's determination that the representations at issue were substantially accurate and not defamatory as a matter of law).  In Maheu v. Hughes Co., 569 F.2d 459, 465-67 (9th Cir. 1977), a case cited by Totah, the court refused to overturn the jury verdict on appeal, rejecting the defendant's substantial truth defense and finding that defamation claims were appropriately submitted to the jury because the facts upon which the defendant relied were disputed.  There is no similar factual dispute that the jury must resolve.

This case is similar to Terry v. Davis Community Church, 131 Cal. App. 4th 1534 (2005).  There the plaintiffs alleged in their complaint that a false report accused one of the plaintiffs, an assistant to a church youth group, of being a sexual predator and having a sexual relationship with a girl, and the other plaintiff, the leader of the youth group, of being involved in the relationship.  Id. at 1539.  The report, however, included no such direct accusation.  Rather the report included the assistant's own words to the girl, stated that the leader was aware of the correspondence, and opined that the relationship was inappropriate.  Id. at 1553.  The plaintiffs, however, asserted that the report implied a sexual relationship, and that the

14

United States District Court
For the Northern District of California

implied statement was defamatory.  The court found that the report "raise[d] the question of whether [the assistant] is a sexual predator," but held that the allegedly implied statement was not actionable because it was undisputed that the assistant wrote the emails and other correspondence to the girl and the leader was aware of the correspondence.  Id.  The statements that provided the basis for inferring that a sexual relationship existed were not false.

Likewise, here, there is no evidence that the purported implication of promiscuity was based on anything other than the substantially true statement that Bies made to Roffman, that Totah had sex with employees of Lucasfilm business partners while representing Lucasfilm abroad.  Therefore, even if Bies' statement implies that Totah was promiscuous it is not actionable because the implication arises from a statement that is substantially true.  Finally, as explained earlier, Bies' statement was privileged because Roffman had an interest knowing about Totah's conduct during Lucasfilm business travel, and Bies shared the information at Roffman's request.  Again, Totah cites no evidence of malice.

In addition to complaining of Bies' statements related to her sexual reputation and behavior while on business travel, Totah alleges that he defamed her by impugning her job performance. Bies told Roffman that she was responsible for errors in text panels at the Korea exhibition.  However, Totah admitted to the

errors.  Thus, this alleged statement does not support a claim for defamation.

Bies told Roffman that Totah "was not a good representative of Lucasfilm on the road."  Such a statement is not a matter of objectively verifiable fact.  It is a statement of opinion akin to the statement in <u>Yagman</u>, 55 F.3d at 1441, that the judge was "dishonest."  Furthermore, Bies made the statement when Roffman questioned him about Totah's conduct on the job.  There is no dispute that Roffman was a person with a legitimate interest in such information, within the meaning of section 47(c).  Nor has Totah produced evidence that Bies maliciously made the statement.  Thus, even if Totah were able to establish that Bies' statement was actionable, it was privileged communication under section 47(c).

Bies also allegedly defamed Totah by telling Roffman that she lacked "polish with the press."  This likewise is a statement of opinion that does not amount to an objectively verifiable fact.  Furthermore, the statement is privileged under section 47(c) because Roffman elicited it by inquiring about Totah's conduct on the job.  Totah has failed to produce evidence of malice, and fails to point to any evidence that Bies lacked grounds for his opinion.  Reliance on her positive performance reviews is inadequate.

Bies also told Roffman that Totah had "superficial knowledge of a lot of the things that she was dealing with."  This statement

United States District Court
For the Northern District of California

is also one of opinion.  The statement is privileged under section 47(c) because Bies made the statement when Roffman questioned him about Totah's conduct on the job.  Again, it is not disputed that Roffman had a legitimate interest in the information.  There is no evidence that Bies spoke with malice or without factual basis.

Totah contends that Bies defamed her by saying that she had a temper and had fights with Lucasfilm partners.  Bies testified that he had witnessed a heated exchange between Totah and a Frenchman involved in the Brussels exhibition and that he was told about an argument she had with a museum director in Madrid.  Totah has not presented evidence that these fights did not occur or that she did not have fights with Lucasfilm partners.  Totah's positive performance reviews are too general to negate Bies' testimony regarding the arguments.  According to the Dias declaration, upon which Totah relies, he was only present at "various times" during the exhibitions in Brussels and Madrid.  Although Dias testified that he never heard from Lucasfilm employees that Totah was unprofessional in any way, he did not specifically address whether Totah argued with Lucasfilm partners in Brussels or Madrid.  He was not necessarily present when the fights occurred.  Ricardo Comissoli, upon whose declaration Totah also relies, was only personally present for Totah's trips to Brazil and Chile. Comissoli did not address whether Totah argued with business partners in Brussels or Madrid.  Furthermore, like the statements above, Bies' representations to Roffman on these points are

17

privileged.  Totah lacks evidence that the statements were made with malice.

Totah also claims that Bies defamed her by stating that she partied and drank too much, and missed business meetings.  Bies told Cheregotis that Totah engaged in excessive drinking and partying while traveling on Lucasfilm business, although he apparently did not mention missed meetings to her.  Totah admitted to being drunk while attending trade shows or licensing shows on behalf of Lucasfilm.  Thus, Bies is entitled to the substantial truth defense as to his statement that Totah drank and partied excessively while on business travel.  In addition, this statement is privileged and Totah lacks evidence that Bies spoke with malice.

Bies also told Roffman about Totah's excessive partying and drinking, and that it prevented her from attending Lucasfilm activities.  Totah denies that she missed meetings.  Even assuming that this amounts to evidence that the latter statement was not substantially true, Bies' communication was privileged.  It is undisputed that Roffman is an interested person and the statement was made in response to his questioning.  Nor has Totah produced evidence of malice on Bies' part, or evidence that Bies lacked reasonable grounds for belief in the truth of his statement.

None of the statements that are the subject of Totah's defamation claim is actionable, either because they are substantially true, because they are opinions, or because they are

United States District Court
For the Northern District of California

18

privileged communications made without evidence of malice, or all three.

                                CONCLUSION

     In sum, Totah has failed to raise a disputed issue of fact material to her claim for defamation based on any statement that there is evidence Bies made.  Therefore, Bies' motion for summary judgment is GRANTED.  The Clerk shall enter judgment for Bies. Bies shall recover his costs from Totah.

     IT IS SO ORDERED.

Dated: 3/8/2012

                              CLAUDIA WILKEN
                              United States District Judge